UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH A. TAYLOR, on his own behalf and on behalf of a class of similarly situated New Afrikan prisoners,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR. Governor, et al.,<br><br>Defendants. | Case No. 14-0647-VC (PR)<br><br>**ORDER DISMISSING WITH LEAVE TO AMEND; DENYING MOTION TO APPOINT COUNSEL; DENYING MOTIONS FOR CLASS CERTIFICATION; AND GRANTING MOTION TO AMEND COMPLAINT**<br><br>Doc. nos. 3, 4, 7, 8 |

Ralph A. Taylor, an inmate at Pelican Bay State Prison ("Pelican Bay") proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging constitutional violations against thirteen defendants. Taylor has filed a motion to appoint counsel, two motions to certify a class and a motion to file an amended complaint. The Court grants the motion to file an amended complaint; the First Amended Complaint ("FAC") will be the operative complaint in this case. Taylor's motion for leave to proceed in forma pauperis is granted in a separate order. The Court now reviews the FAC.

**DISCUSSION**

**I.      Standard of Review**

A federal court must screen any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, to dismiss any claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or fails to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

But there is no respondeat superior liability under Section 1983. *Lemire*, 726 F.3d at 1074. That is, a supervisor is not liable merely because the supervisor is responsible, in general terms, for the actions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984). A supervisor may be liable only on a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). It is insufficient for a plaintiff to allege generally that supervisors knew about the constitutional violation or that they generally created policies and procedures that led to the violation, without alleging "a specific policy" or "a specific event" instigated by the supervisors that led to the constitutional violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

**II.    Taylor's Allegations**

Taylor brings this case on behalf of himself and a class of similarly situated New Afrikan prisoners. Taylor's FAC alleges the following:

On June 27, 2013, Pelican Bay Security Housing Unit ("SHU") Institutional Gang Investigators D. Milligan and G. Pimentel conducted a search of Taylor's cell as part of a six year

1  review of Taylor's status as an active or inactive member of the prison gang known as the Black
2  Guerilla Family. During the cell search, Milligan and Pimentel confiscated Taylor's books,
3  manuscripts, pamphlets, articles and essays on the false pretense that these items constituted gang-
4  related material.
5        Officials at the California Department of Corrections and Rehabilitation ("Department of
6  Corrections") and Pelican Bay Institutional Gang Unit maintain that New Afrikan Revolutionary
7  Nationalism ("NARN") is a product of the Black Guerilla Family, but it is not. NARN is an
8  ideology, not a gang, social group or organization. This ideology evolved during the late 1960's-
9  70's Black Liberation Movement. By 1968, NARN was the ideology of the New Afrikan
10 Independence Movement, which advocated the establishment of an independent New Afrikan
11 Nation in the Southern part of the United States.
12       Pelican Bay officials' pattern and practice of confiscating NARN literature on the ground
13 that it is gang material amounts to a violation of Taylor's and similarly situated prisoners' First
14 Amendment rights to read literature expressing their ideological political views and beliefs.
15       Prison officials also prohibit Taylor and other inmates from studying or speaking the New
16 Afrikan Swahili language. This is part of a system-wide policy for imposing a ban upon specific
17 words, names, phrases and concepts related to NARN and New Afrikan culture in violation of
18 Taylor's and other inmates' First Amendment rights.
19       Taylor filed a 602 appeal seeking the cessation of prison officials' ban on all things
20 NARN-related and the return of his property. The appeal was denied at all levels of review.
21       Prison officials utilize Taylor's and other new Afrikan prisoners' validation as members of
22 the Black Guerilla Family as a pretext for claiming New Afrikan prisoners promote prison gang
23 activity, which cloaks the officials' race-based discriminatory policies. This policy is sustained
24 and sanctioned by the Secretary of the Department of Corrections and the Governor of California
25 because they fail to stop the race-based discrimination and suppression of ideological and political
26 expression.
27       Based on these allegations, Taylor seeks declaratory and injunctive relief and damages.
28

**III. Class Allegations**

"[A] litigant appearing in propria persona has no authority to represent anyone other than himself." *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962). The allegations pertaining to a class action are dismissed because *pro se* prisoner-plaintiffs are not adequate class representatives able to fairly represent and adequately protect the interests of a class. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). Accordingly, Taylor's two motions for class certification are DENIED, and his class claims are dismissed without leave to amend.

**IV. Taylor's Claims**

The FAC asserts three claims: (1) a due process claim based on the failure of defendants to grant Taylor's 602 appeals; (2) a First Amendment claim for damages and for injunctive relief; and (3) an Equal Protection claim for damages and injunctive relief.

**A. Claim Regarding Denial of Appeals**

The failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself and the State of California has not created a protected interest in an administrative appeal system in its prison. California's regulations grant prisoners a purely procedural right: the right to have a prison appeal. *See* CAL. CODE REGS. tit. 15, §§ 3084-3084.9 (2014). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli*, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Therefore, Taylor's claim based on the denial of his administrative appeals is dismissed. Dismissal is without leave to amend as amendment of this claim would be futile.

### B. First Amendment Claim

#### 1. Claim for Damages

Prisoners retain those First Amendment rights that do not conflict with their status as prison inmates or with legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Regulations limiting prisoners' access to publications or other information are valid if they are reasonably related to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Liberally construed, the FAC appears to allege a First Amendment claim for damages against Milligan and Pimentel for confiscating Taylor's reading materials. It also appears to allege a claim against Warden Lewis, in his individual capacity, for establishing a pattern or practice at Pelican Bay that violates Taylor's First Amendment right to read literature expressing his ideological political views and beliefs. However, the FAC fails to include factual allegations stating how any other defendant violated Taylor's First Amendment rights. *See Leer*, 844 F.2d at 633. Therefore, with the exception of the claim against Milligan, Pimentel and Lewis, this claim is dismissed as to all other defendants with leave to amend.

#### 2. Claim for Injunctive Relief

Taylor also seeks injunctive relief against prison officials in their official capacities for failing to take action to curb the suppression of ideological and political expression.

"The requirements for the issuance of a permanent injunction are the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) (internal quotations omitted). Before issuing a permanent injunction against a state government agency, a district court must determine that the agency's conduct violates federal constitutional law. *Id.* at 1496. Further, there must be a showing of an intentional and pervasive pattern of misconduct in order to enjoin a state agency. *Id.* at 1500. The plaintiff may show, for example, that the misconduct flowed from an agency policy or plan. *Id.* at 1500-1501. "Specific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief." *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1993).

Although the Eleventh Amendment bars from the federal courts suits against a state by its own citizens, *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985), a suit against a state official seeking prospective injunctive relief from unconstitutional state action is not a suit against the state, even if the state is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997). "A state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

Liberally construed, the FAC appears to state a claim against prison officials, acting in their official capacity, for establishing a policy or plan that violated Taylor's First Amendment rights. Taylor names several prison officials, the Secretary of the Department of Corrections and the Governor of California. To state a claim for injunctive relief, it is sufficient to name one official acting in his or her official capacity. In this instance, it is sufficient for Plaintiff to name Warden Lewis, acting in his official capacity. The First Amendment claim for injunctive relief against Governor Brown and Secretary Beard is dismissed, with prejudice.

**B. Equal Protection Claim**

A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent by a state actor. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant acted at least in part because of the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (claim that alleged harmful treatment but mentioned nothing about disparate treatment was properly dismissed).

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. *Johnson v. California*,

543 U.S. 499, 505-06 (2005). A prison classification based on race is immediately suspect and is subject to the same strict scrutiny as a racial classification outside prison. *Id*. at 508-10. Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest. *Id.* at 510-11; *Richardson v. Runnels*, 594 F.3d 666, 671 (9th Cir. 2010) (applying *Johnson* to racial lockdowns in response to prison disturbances). *Johnson* did not rule out race-based classifications and did not eliminate prison security as a reason for such classifications, but instead determined that prison officials must demonstrate that race-based policies are narrowly tailored to address a compelling government interest such as prison security. *See Johnson*, 543 U.S. at 511-13, 515 (remanding case for determination of whether Department of Corrections' policy of temporarily segregating inmates by race when they arrive in the prison system initially or are transferred to a new prison is narrowly tailored to serve a compelling state interest).

Although the FAC alleges that Taylor suffers from discrimination, it does not make clear whether this discrimination is based on his race or his membership in an ideological movement. Also, the FAC fails to allege that any specific defendant intentionally discriminated against Taylor on either basis. *See Leer*, 844 F.2d at 633. The Equal Protection claim for damages and injunctive relief is therefore dismissed as to all defendants with leave to amend.

**V. Motion to Appoint Counsel**

Taylor moves for the appointment of counsel because the legal issues are complex and he is unable to adequately investigate or present the factual issues regarding his claims.

"[I]t is well-established that there is generally no constitutional right to counsel in civil cases." *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996). Nonetheless, under 28 U.S.C. § 1915(e)(1), the Court has the discretion to appoint counsel to "any person unable to afford counsel." The discretionary appointment of counsel typically is reserved for cases involving "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be

viewed together before reaching a decision." *Id.* Here, exceptional circumstances requiring the appointment of counsel are not evident. The request for appointment of counsel is DENIED. If, in the future, the Court concludes it is necessary to appoint counsel to represent Taylor, it shall do so *sua sponte*.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Taylor's class claims are dismissed without leave to amend and the motions for class certification are DENIED. Doc. nos. 4 and 7.

2. Taylor's motion for appointment of counsel is DENIED. Doc. no. 3.

3. Taylor's motion to amend his complaint is GRANTED. Doc. no. 8.

4. Taylor's claim based upon the denial of his administrative appeals is dismissed without leave to amend.

5. Taylor's First Amendment claim for damages against Milligan, Pimentel and Lewis, in his individual capacity, is cognizable. Taylor's First Amendment claim for injunctive relief against Lewis, in his official capacity, is cognizable. However, the Court will not serve the First Amendment claims until it reviews Taylor's Second Amended Complaint ("SAC"), if he files one, and will serve it with any cognizable claims alleged in the SAC.

6. The First Amendment claim against all defendants other than Milligan, Pimentel and Lewis and the Equal Protection claim against all defendants are dismissed with leave to amend.

7. Taylor may, but is not required to, file a SAC to remedy the deficiencies noted in this Order. In his SAC, he may not include any class allegations. He must include factual allegations indicating the specific conduct of each defendant that violated his First Amendment and Equal Protection rights. If Taylor cannot allege the conduct of an individual that violated these rights, that person should not be included in the SAC.

8. If Taylor wishes to file an SAC, he must do so within twenty-one days from the date of this Order. The SAC must include the caption and civil case number used in this Order and the words SECOND AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the original complaint, Taylor must include in it all the allegations he wishes

to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from the original complaint by reference. Failure to amend within the designated time will result in the dismissal with prejudice of the claims that are dismissed in this Order with leave to amend. Taylor's cognizable First Amendment claims will be served at that time.

9. It is Taylor's responsibility to prosecute this case. Taylor must keep the Court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

10. This Order terminates docket nos. 3, 4, 7 and 8.

**IT IS SO ORDERED.**

Dated: May 14, 2014

_____

VINCE CHHABRIA
United States District Judge