1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RALPH A. TAYLOR,

    Plaintiff,

v.

D. MILLIGAN, et al.,

    Defendants.

Case No.  14-cv-00647-VC (PR)

**ORDER DENYING MOTION TO DISMISS AS MOOT AND GRANTING SUMMARY ADJUDICATION ON EQUAL PROTECTION CLAIM**

Re: Dkt. No. 36

    Ralph A. Taylor, a California prisoner, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against Institutional Gang Investigators D. Milligan and G. Pimentel in their individual capacities, and against former Warden G.D. Lewis in his individual and official capacities. Taylor's second amended complaint ("SAC") alleges that Milligan and Pimentel violated Taylor's First Amendment and equal protection rights by confiscating his written material.  He adds that Lewis violated these rights by denying Taylor's administrative grievance about the confiscation and by establishing a pattern or practice of confiscating certain written material.  The defendants move for dismissal or summary judgment only on the equal protection claim, which Taylor opposes.[1]  In the defendants' reply, they indicate they will seek leave to file a further summary judgment motion on the First Amendment claim at a later date.  The Court construes this as the request to file a further motion and grants it.[2]  For the reasons discussed below, defendants are granted summary adjudication on the equal protection claim.  Because summary adjudication is granted, the motion to dismiss is denied as moot.

---

[1]In his opposition, Taylor argues he is entitled to summary judgment on his First Amendment claim because the defendants have not filed a dispositive motion on it.  This request is denied; Taylor did not move for summary judgment on this claim.

[2]The defendants also request that the Court rule on the First Amendment claim based on the argument in their reply.  This request is denied.

# BACKGROUND

## I. Undisputed Facts

Taylor has signed his SAC under penalty of perjury.  For purposes of this order, the Court considers the statements based on Taylor's personal knowledge in the SAC to be admissible evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (finding complaint signed under penalty of perjury constituted admissible evidence).

### A. The Parties

Taylor is a prisoner at Pelican Bay State Prison who is a validated member of the prison gang known as the Black Guerilla Family and, as a result, is housed in the Secured Housing Unit. SAC at 1, 3.  Taylor admits that he is a "New Afrikan" and is a member of a movement called New Afrikan Revolutionary Nationalism ("NARN").  SAC at 5-9.

Milligan is a Pelican Bay Correctional Officer, who, since 2005, has been assigned to the Institutional Gang Investigation Unit ("IGI") where he is responsible for investigating gang activity and developing and implementing gang-management strategies.  Milligan Dec. ¶ 1. During his career, Milligan endorsed over 200 gang validations, including for Black Guerilla Family members and associates, and has conducted numerous gang member and associate debriefings.  *Id.* ¶ 3.  He has reviewed hundreds of pages of documents and other materials confiscated from Black Guerilla Family members and associates, which has given him insight into how this gang functions.  *Id.*

Pimentel is a Pelican Bay Correctional Officer who was assigned to the IGI in 2013. Pimentel Dec. ¶ 1-2.

Lewis is the former Pelican Bay warden.  He has received training and on-the-job experience with gang validations by attending gang member and associate debriefings and by reviewing hundreds of pages of documents and other material confiscated from gang members. Lewis Dec. ¶ 1, 3.

**B. Regulations Related to Prison Gangs and Source Items Used for Validation[3]**

A "prison gang" is any gang with its roots or origins within the California Department of Corrections and Rehabilitation or any other prison system.  15 Cal. Code Regs. ("CCR") § 3000. The primary goal of prison gangs, which are highly organized entities with a clear power structure, is to harm people inside and outside of the prison, while generating funds through illicit activities. Milligan Dec. ¶ 4; Lewis Dec. ¶ 4.  "Inmates and parolees shall not knowingly promote, further or assist any gang as defined under section 3000." 15 CCR § 3023(a).  The Department of Corrections puts an inmate in a Secured Housing Unit if he is a validated member or associate of a prison gang.  Milligan Dec. ¶ 4; Lewis Dec. ¶ 4.

Regulations prohibiting gang activity help maintain prison security and order because violent and disruptive gang activity poses a threat to other inmates and prison staff, and hinders officials' efforts to rehabilitate prisoners.  Milligan Dec. ¶ 9; Lewis Dec. ¶ 4.  If inmates were permitted to engage in gang activity, and intervention did not occur until after an inmate committed a gang-related criminal act, security and order would be compromised and prison gangs would flourish.  Milligan Dec. ¶ 9; Lewis Dec. ¶ 4.  Regulations concerning gang validation, such as 15 CCR § 3378(c)(1-3), require gang members to be revalidated every six years based on current gang activity, verified by at least three independent source items in the inmate's central file.  Milligan Dec. ¶ 10; Lewis Dec. ¶ 4.

Regulations concerning source items to be used in gang validations, as indicated in 15 CCR § 3378(c)(8)(C), allow the use of written materials, including but not limited to, the gang's membership or enemy lists, constitutions, organizational structure, codes and training materials. Milligan Dec. ¶ 11; Lewis Dec. ¶ 4.  Prison staff must document how the written material is reliable evidence of association or membership in the prison gang.  Milligan Dec. ¶ 11; Lewis Dec. ¶ 4.

---

[3]The regulations discussed in this section were in effect in June 2013, the time at issue.  Effective June 1, 2015, some of the regulations addressing prison gangs and gang members' placement in the SHU were amended and renumbered.

**C. Confiscation of Written Materials from Taylor's Cell on June 27, 2013**

On June 27, 2013, Milligan conducted a search of Taylor's cell in connection with Taylor's six-year review as a Black Guerilla Family member.  Milligan found and confiscated several written items he characterizes as gang-related.  Milligan Dec. ¶ 12.  On June 28, 2013, Taylor was issued a cell-search receipt which listed the confiscated written materials.  *Id.*  Also on June 28, 2013, Taylor's other personal property was returned to him.  *Id.*

Pimentel was present when Milligan searched Taylor's cell because Pelican Bay's policy requires two correctional officers to escort an inmate housed in the Secured Housing Unit.  *Id.* ¶ 4.  Pimentel assisted Milligan in escorting Taylor from his cell, and then assisted Milligan by packing up the property identified by Milligan for confiscation.  *Id.* ¶ 5.  Pimentel had no further contact with Taylor or Milligan regarding Taylor's six-year review because he did not have extensive knowledge of the Black Guerilla Family.  *Id.* ¶ 7.

Upon review of the confiscated written materials, Milligan authored a report explaining why the confiscated written materials were evidence of Taylor's continued membership in the gang.  Milligan Dec. ¶ 13; Lewis Dec. ¶¶ 4-6.

Taylor filed a grievance alleging that his First Amendment rights were violated by the confiscation of the written materials which, he claimed, were political and not related to the Black Guerilla Family.  SAC ¶ 8.  Lewis reviewed this grievance at the second level of review and concluded that the materials were properly confiscated because they were gang-related and, thus, threatened the safety and security of the institution.  Lewis Dec. ¶¶ 5, 7.

**II. Disputed Facts**

The defendants object to many portions of Plaintiff's declaration.  The Court need not rule on these objections individually and does not consider inadmissible evidence.

The defendants submit under seal the materials that were confiscated from Taylor's cell and used in his six-year gang validation review.  They assert that these documents are the basis of Taylor's claims.  However, Taylor states that these documents are not the basis of his claims, that his claims are based upon eight written documents listed in his SAC that were confiscated from his cell, but were not used in his six-year review and were not returned to him.  *See* SAC ¶ 5A-H.

4

United States District Court
Northern District of California

1  Taylor states that the eight documents describe various aspects of NARN and are not related to the

2  Black Guerilla Family.

3      Taylor defines NARN as "systematic scientific political, socio-cultural, economic and

4  moral values of New Afrikan people (as in a nation). It is a particular way of viewing the reality

5  and trends inherent in United States society from a dialectical and historical materialist perspective

6  of a domestic colonized nation (New Afrikan)." Taylor Dec. at 7. He also states that NARN-

7  related entities are not affiliated with the Black Guerilla Family. Taylor Dec. at 3, 17.

8      Milligan and Lewis state that NARN, as well as the New Afrikan Collective Think Tank,

9  the George Jackson University and the New Afrikan Institute of Criminology 101, are entities that

10 promote the Black Guerilla Family. Milligan Dec. ¶ 7; Lewis Dec. ¶ 4. They state that, through

11 confidential interviews with inmates, confiscated materials and other confidential sources, the IGI

12 has learned that the Black Guerilla Family is attempting to use these groups as a "cover" to lend it

13 respectability and to facilitate communication between Black Guerilla Family affiliates. *Id.*;

14 Milligan Dec. ¶ 7.

15     Taylor alleges that Lewis, in his role as warden of Pelican Bay, established a policy and

16 practice of confiscating NARN-related materials because of his unsubstantiated theory that NARN

17 is related to the Black Guerilla Family. SAC ¶¶ 13-14.

18                              **LEGAL STANDARD**

19     Summary judgment is only proper where the pleadings, discovery, and affidavits show

20 there is "no genuine issue as to any material fact and that the moving party is entitled to judgment

21 as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome

22 of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material

23 fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

24 nonmoving party. *Id.*

25     The court will grant summary judgment "against a party who fails to make a showing

26 sufficient to establish the existence of an element essential to that party's case, and on which that

27 party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

28 (1986). The moving party bears the initial burden of identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.*

In considering a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party.  *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999).

## DISCUSSION

### I. Legal Standard for Equal Protection Claim

The Equal Protection Clause requires "that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'"  *City of Cleburne, Tex. v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, (1985).  To avoid summary judgment on an equal protection claim, a plaintiff must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the defendant's decision was motivated by intentional discrimination based on the plaintiff's membership in a class.  *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).  Conclusory statements of bias cannot carry the nonmoving party's burden in opposing a motion for summary judgment.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

In the prison context, except for claims based on racial discrimination, courts must defer to the judgment of prison officials; therefore, when a prison regulation or practice impinges on inmates' constitutional rights, it is valid if it is reasonably related to legitimate penological interests.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Strict scrutiny is used only in regard to claims of infringement of inmates' constitutional right to racial equality.  *Johnson v. California*, 543 U.S. 499, 530-31 (2005).

United States District Court
Northern District of California

6

United States District Court
Northern District of California

**II. Analysis**

Taylor's claim is not based upon his race, but upon his "New Afrikan race/culture," and his "membership within the ideological movement of NARN." SAC ¶ 12.  NARN, as an ideological movement, is not a racial class.  The equal protection claim, then, is subject to the rational basis test, which requires the challenged action "to bear some rational relationship to legitimate state purposes." *Turner*, 482 U.S. at 89.

To the extent the decision to seize the materials can be considered discrimination at all, it was reasonably related to the legitimate penological interest of maintaining security in the prison. Although Taylor contends that NARN is unrelated to the Black Guerilla Family, the Court has reviewed the sealed documents and concludes otherwise.  And as Milligan's testimony demonstrates, the Black Guerilla Family is a threat to prison security.

To the extent Taylor contends the decision to seize the materials was based on a hostility to the content of the materials themselves, that relates to his First Amendment claim, which, as discussed above, is not ripe for decision.

Accordingly, summary adjudication on the equal protection claim is granted in favor of the individual defendants.  And because Taylor has lost on his equal protection claim, he cannot make out a Monell "pattern or practice" claim against Lewis.  *See Plumeau v. School Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (pattern or practice claim requires an underlying violation of a constitutional right); *see also McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986) (state officers "liable in their official capacity only if policy or custom played a part in the violation of federal law").  Therefore, summary adjudication is granted to Lewis on the equal protection claim as well.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. The defendants' motion to dismiss the equal protection claim is denied as moot and their motion for summary adjudication of the equal protection claim is granted.  Dkt. No. 36.

2. The defendants' request to file a dispositive motion on Taylor's First Amendment claim is granted.  The defendants shall file the motion within twenty-eight days from the date of this

order; Taylor's opposition is due twenty-eight days thereafter.  The defendants shall file their reply fourteen days after Taylor files his opposition.

In their motion, the defendants shall address Taylor's contention that the documents they have submitted under seal are not the documents Taylor describes in his SAC upon which his claim is based.  If the documents the defendants have submitted under seal are not those described in the SAC, they shall submit the relevant documents with their motion.

The defendants shall submit with their motion the notice set forth in *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), informing Taylor how to oppose a summary judgment motion.

3. This Order terminates docket number 36.

**IT IS SO ORDERED**.

Dated: August 3, 2015

_____
VINCE CHHABRIA
United States District Judge

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    RALPH A. TAYLOR,                      Case No.  14-cv-00647-VC

            Plaintiff,

8

       v.                                  **CERTIFICATE OF SERVICE**

9

10   D. MILLIGAN, et al.,

            Defendants.

11

12        I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S.

13   District Court, Northern District of California.

14        That on August 3, 2015, I SERVED a true and correct copy(ies) of the attached, by placing

15   said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by

16   depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery

17   receptacle located in the Clerk's office.

18

19   Ralph A. Taylor ID: D-03780
     Corcoran State Prison 4B2L-49
20   PO Box 3481
     Corcoran, CA 93212
21

22   Dated: August 3, 2015

23

24                                         Richard W. Wieking
                                           Clerk, United States District Court
25

26

27   By:_____

28   Kristen Melen, Deputy Clerk to the
     Honorable VINCE CHHABRIA

United States District Court
Northern District of California

9